THE GOOD HOPE (three cases).

(District Court, S. D. New York.  May 26, 1911.)

**1.** SHIPPING (§ 132*)—DAMAGE TO CARGO—LIABILITY OF VESSEL—LIMITATIONS IN BILLS OF LADING.

Under the Harter act (Act Feb. 13, 1893, c. 105, §§ 1, 2, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]). which makes it unlawful for any vessel transporting goods between ports of the United States and foreign ports or her owners to limit their liability for loss through their fault or negligence, or to lessen the obligation of the master or officers to properly handle and stow the cargo, in order for a vessel to avail herself of a provision of bills of lading exempting her from liability for damage to cargo from heating, she has the burden of proof to show that the heating which caused damage to her cargo was not due to improper or negligent handling or storage.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 132.*

Limitation of owner's liability, see note to The Longfellow, 45 C. C. A. 387.]

**2.** SHIPPING (§ 132*)—DAMAGE TO CARGO—LIABILITY OF VESSEL—IMPROPER HANDLING AND STOWAGE.

Damage to a portion of a cargo of jute on a voyage from Calcutta to New York held on the evidence to have been caused by heating due to rainwater which entered the hatchway, which was negligently left open while the ship was being loaded, from liability for which she was not exonerated by a clause in the bills of lading exempting her from liability for damage by heating.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 132.*

Liabilities of vessel owners for loss or injury from improper stowage, see note to The Gualala, 102 C. C. A. 553.]

**3.** SHIPPING (§ 131*)—LIABILITY OF VESSEL—SHORT DELIVERY OF CARGO.

The rule that a vessel is liable for cargo received, but not delivered, does not apply to a case where all the cargo received was carried to the port of delivery, but a portion of it had been so damaged on the voyage that it could not be identified.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 467; Dec. Dig. § 131.*]

In Admiralty.  Suits by the Chelsea Fibre Mills, Robert Balfour, and others, and Henry P. Winter and others, respectively, against the steamship Good Hope.  Decrees for libelants.

Campbell, Harding & Pratt (Douglas Campbell, of counsel), for libelant Chelsea Fibre Mills.

Taft & Sherman (Theodore M. Taft, of counsel), for libelants Balfour, Williamson & Co.

Hunt, Hill & Betts (George Whitefield Betts, Jr., and Robert McLeod Jackson, of counsel), for libelants Winter & Smillie.

Convers & Kirlin (J. Parker Kirlin and Russell T. Mount, of counsel), for claimants.

HOLT, District Judge.  These are three actions brought against the steamer Good Hope to recover for damage to certain bales of jute consigned to the different libelants, occurring on a voyage from Calcutta to New York.  The Good Hope is a steamer of the turret

type. She had five hatches. The damage occurred to the jute under No. 2 hatch. There was no substantial damage in any other part of the ship. In No. 2 hatch, after about six tiers of jute which were not damaged had been taken out, there was found a mass of damaged jute constituting a cube of about 12 to 15 feet in height, width and length, directly under the hatch. Some of this portion of the cargo had become so disintegrated that the bales were one mass of decayed matter, the identity or ownership of which it was impossible to determine. Others of the bales were partially injured, but their identity could be determined. The bills of lading issued for this cargo provided that the steamer was not liable for loss or damage from heat, sweat, rain, heating, or decay.

[1] In order to have the exceptions in the bills of lading available for the claimants, it must be shown that any damage from those causes was not caused by fault on the part of the ship. The libelants claim that the ship was not seaworthy, on the ground, in the first place, that the turret type of ship is not fit to carry jute. I think the evidence preponderates that that type of ship is frequently used for that purpose, and is a proper vessel for such a cargo. The libelants also claim that the ship was not seaworthy because it was not furnished with adequate ventilating apparatus. But I think that the evidence shows that the ventilating apparatus on this ship was adequate, and, if anything, was rather better than usual on other ships of the same class. It is my opinion, therefore, that the claim that the ship was not seaworthy is not sustained by the evidence.

[2] The claimants rely upon the exceptions in the bills of lading. The evidence establishes in my opinion that the damage in question was caused by heating, the result of excessive moisture in the part of the hold where the heating occurred. The burden of proof is upon the claimants on the question whether such moisture and heating was due to the fault of the ship. In my opinion they have not established freedom from fault in that respect. It is impossible to be sure from the evidence what the cause of the heating was, but in my opinion the proof tends to show that an excessive amount of rainwater got into the portion of the jute that was injured, probably from No. 2 hatch being open, leaving the jute exposed to the rain while loading. The claimants assert that the whole of the jute shipped was unusually moist, and that the portion damaged, being farthest away from the air passing into the hold through the ventilating apparatus, heated from the moisture in the bales. I do not think that the cause of the damage can be attributed to the inherently moist condition of the cargo. If it had been, in my opinion, the same damage would have exhibited itself in the jute similarly situated in the other hatches. The fact that the evidence does not affirmatively establish exactly what was the cause of the damage is not decisive. The consignees of goods which are damaged in the course of a long voyage very rarely can furnish evidence as to the manner in which the damage is caused. The second section of the Harter act declares. that it is unlawful for the owner of any vessel transporting merchandise between the United States and foreign ports to insert in any bill

of lading ɛ .y agreement whereby the obligations of the master, officers, agents, or servants to carefully handle and stow the cargo shall in any wise be lessened. The evidence in my opinion does not establish that the obligation of this vessel to properly stow the cargo was performed, and therefore the exceptions in the bills of lading in my opinion do not exonerate the vessel.

[3] The claim is made in respect to the bales which could not be identified that compensation can be had for them on the fundamental principle that they were receipted for on the bills of lading, and not delivered. I think the proof shows that all the jute mentioned in the bills of lading was transported to New York, and that the reason why certain bales could not be identified was that their identity was lost by the decay and degeneration of that portion which was injured in No. 2 hatch. I do not think, therefore, that the general rule applies that the ship was liable because certain bales enumerated in the bills of lading were not found when the voyage was over, but on the grounds already stated I think that the libelants are entitled to recover for the goods which were lost as well as for the damage to the bales which were capable of identification.

In the case of Winter and Others against The Good Hope, the sole claim is for 55 bales of jute and 1 bale of jute cuttings lost. I think that the libelants are entitled in the case of those bales to recover their value, which has been computed to be $369.66 for the consignment to Winter & Smillie, and $332.64 for the consignment to Smith & Fox, assigned to Winter & Smillie, making a total of $702.30, for which, with interest and costs, I direct judgment.

In the two other cases, there should be a reference to ascertain the damage, unless counsel agree on the amount.